Filed 10/22/13  P. v. Sanchez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

ANNA SANCHEZ,

     Defendant and Appellant.

E056262

(Super.Ct.No. FBA1100192)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Victor R. Stull, Judge.  Affirmed.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Sean Rodriquez and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Anna Sanchez guilty of one count of second degree commercial burglary. (Pen. Code, § 459.) A trial court sentenced her to three years in county prison.

On appeal, defendant contends that the court erred in admitting evidence of three prior incidents under Evidence Code section 1101, subdivision (b).[1] We affirm.

FACTUAL BACKGROUND

Barbara Rutledge, an asset protection associate for Walmart, was alerted by a Walmart associate who worked at the refund desk that a woman, later identified as Angelica, "kept coming in making refunds" that were odd. The associate noticed that Angelica kept returning common household items, such as toilet paper and paper towels. She thought the returns were odd since the items were things that people would normally need, such that one would not return them. Rutledge reviewed surveillance videos showing the refund desk at the dates and times the associate specified. Rutledge noticed that on a couple occasions another woman, later identified as Terry, was with Angelica in the videos.

On March 19, 2011, Rutledge was on duty at Walmart and observed defendant shopping. Rutledge recognized defendant from recent security videos. Rutledge observed defendant walk down an aisle and meet up with Angelica. She subsequently saw defendant and Angelica shopping with Terry in the toilet paper aisle. Rutledge

---

[1] All further statutory references will be to the Evidence Code, unless otherwise noted.

called her supervisor, Maria Mata-Lopez, to help her observe the three women. Rutledge followed defendant, and Mata-Lopez followed Angelica and Terry. Rutledge and Mata-Lopez stayed in contact with each other on their cell phones while they followed the three suspects.

Mata-Lopez saw Angelica head toward the cash register in the automotive department. Terry sat on a bench in the automotive department, where customers would wait for their vehicles. Angelica purchased the items in her cart at the register (e.g., items such as toilet paper, paper towels, paper plates, etc.). Mata-Lopez observed Angelica hand the receipt from the items she just bought to Terry. Angelica and Terry then exited the store with the purchased items. Terry subsequently came back into the store.

Meanwhile, Rutledge observed defendant, who had a shopping cart containing toilet paper and other items. At some point, Rutledge saw defendant and Terry together, and she observed Terry hand defendant a receipt. They then went their separate ways. Defendant pushed her cart to the "plastic aisle." She stopped halfway down the aisle and took out a package of toilet paper and other items that were in her cart and set them aside. She reached behind some merchandise on the shelf, pulled out a plastic Walmart bag full of merchandise, and put the bag in her cart. She walked to the front of the store. Rutledge maintained a visual on her. Mata-Lopez joined Rutledge, and they followed defendant. Defendant pushed her shopping cart past the cash registers and left the store. She was not required to show her receipt to the store greeter because Rutledge had previously advised the greeter to let her pass. Rutledge and Mata-Lopez stopped defendant in the vestibule (the area between the store and the outside), identified

3

themselves, and asked her to come back inside the store for failure to pay for the merchandise. Defendant said she had a receipt and offered to show it. Mata-Lopez said defendant just needed to go to the back office with them. Defendant complied. Defendant then gave Mata-Lopez the receipt that she had been trying to show her. The receipt was from Angelica's purchase of the same or similar items in the automotive department that day.

## ANALYSIS

### The Trial Court Properly Admitted the Evidence of Defendant's Prior Conduct at Walmart

Defendant contends that the court abused its discretion under section 352 in admitting evidence of uncharged acts by her, Angelica, and/or Terry, which occurred the month prior to the current incident at the same Walmart store. Defendant argues that such evidence (e.g., video clips and testimony) had no probative value, was prejudicial, and deprived her of her constitutional rights to due process and a fair trial. We find no abuse of discretion.

A. *Evidence of Prior Acts*

Before trial, the defense objected to evidence that the prosecution intended to introduce of activity that occurred at Walmart on February 1, 2, and 7, 2011. The prosecution had surveillance video clips that showed defendant, Angelica, and Terry together at Walmart on those days, conducting activity that was similar to the activity in the current offense. The prosecution wanted to introduce the video clips to show that the three women knew each other and worked together. Defense counsel argued that the

4

videos would be confusing to the jury, and that they would mislead the jury as to the conduct from the current offense. The court allowed the evidence, stating that it demonstrated defendant's intent and a "semi-sophisticated scheme to defraud Wal-Mart of its property." Therefore, the prosecution introduced the following evidence at trial:

Rutledge testified that, on February 1, 2011, she was on duty and saw defendant, Angelica, and Terry in the store. A surveillance video clip from approximately 5:00 p.m. that day was played for the jury as Rutledge explained what happened. Rutledge testified that she observed Angelica and Terry had a grocery cart full of merchandise, and that defendant had a grocery cart of similar or the same merchandise. Defendant went in a different direction with her cart, so Rutledge followed Angelica and Terry. She observed them go to the automotive department, where Angelica paid for their items. Rutledge saw Angelica and Terry exit the store from the automotive department. She stopped watching them since they paid for everything, and she continued walking around the store. Rutledge noticed defendant sitting at the McDonald's located inside the Walmart store. Defendant now had a shopping cart with a plastic Walmart bag full of merchandise.[2] Next, Rutledge saw Angelica and Terry reenter the store, without any merchandise, and meet defendant. They had lunch together. Rutledge then observed defendant as she was leaving the store. Defendant showed the greeter a receipt for the merchandise in her cart and exited the store. Rutledge later reviewed the surveillance videos from that day to find out where defendant had paid for her merchandise. The

___

[2] Rutledge initially testified that defendant had "*a* plastic bag with merchandise," but later said that defendant had "Wal-Mart *bags* full of merchandise." (Italics added.)

videos showed defendant go into the shoe department with a cart full of merchandise. She went out of the camera's view, and when she came back into view, she no longer had just merchandise, but had plastic Walmart bags full of merchandise. Rutledge checked every cash register video and could not find any video of defendant paying for that merchandise.

Rutledge next testified regarding a surveillance video clip from February 4, 2011, which was shown to the jury. The surveillance video from around 12:12 p.m. showed Angelica and Terry purchasing items at the automotive department register. Rutledge explained that once the purchase was complete, Terry left the store, and Angelica walked back into the store. Then, at 12:24 p.m., the surveillance video showed defendant and Angelica walking past the front registers with bagged merchandise similar to what Angelica had purchased in defendant's cart. Rutledge said she went back and looked for video footage that showed defendant paying for her items, but could not find any.

Rutledge then testified concerning a surveillance video clip from February 7, 2011, which was also played for the jury. Rutledge testified that she reviewed the surveillance video and noted that defendant, Angelica, and Terry were shopping at Walmart together that day. They were in the same aisle using two shopping carts. It appeared that they were putting similar or the same items in each cart. Angelica and Terry paid for merchandise in their cart at the automotive department register. As Angelica was paying, the video showed that Terry left the store with the merchandise. Angelica went back into the store after she finished paying. Rutledge testified that the video showed defendant, a few minutes later, pushing her shopping cart past a closed

register, as she headed toward the exit. Defendant handed the greeter a receipt and left the store. Rutledge reviewed all the video pertaining to defendant from that day and could not find any footage of her paying for the merchandise. However, the video did show defendant push her cart into the parking lot and meet up with Angelica and Terry, as Terry was putting the merchandise she and Angelica had purchased into a car. Defendant pushed her cart over to a fourth female, who then took the cart and went back into the store to get a refund. The receipt she used for the refund was the receipt from Angelica's purchase at the automotive department that day.

B. *Standard of Review*

Evidence of uncharged acts by a defendant is admissible under section 1101 when relevant to prove some fact (such as motive, intent, identity, or a plan) other than the defendant's propensity or disposition to commit such acts. (§ 1101, subd. (b).) To be admissible, such evidence """"must not contravene other policies limiting admission, such as those contained in Evidence Code section 352."' [Citation.]" (*People v. Lewis* (2001) 25 Cal.4th 610, 637.) Under section 352, "the probative value of the proffered evidence must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. [Citations.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1195 (*Cole*).) On appeal, we review the trial court's ruling for abuse of discretion. (*Ibid.*)

C. *The Court Properly Admitted the Evidence*

"[E]vidence of a defendant's uncharged misconduct is relevant where the uncharged misconduct and the charged offense are sufficiently similar to support the

7

inference that they are manifestations of a common design or plan." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 401-402 (*Ewoldt*), superseded by statute on another point as stated in *People v. Robertson* (2012) 208 Cal.App.4th 965, 991.) "[T]he plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense. [Citation.]" (*Ewoldt*, at p. 403.) "In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" (*Id*. at p. 402.)

Applying these principles, we find no abuse of discretion or constitutional violations in the court's admission of the prior acts evidence. The prior acts evidence demonstrated the carefully orchestrated scheme by which defendant took merchandise from Walmart without paying for it. In both the prior acts and the charged crime, defendant, Angelica, and Terry selected the same or similar items for their shopping carts; Angelica and Terry went to the automotive department register to purchase their items and exit the store; either Angelica, Terry, or both of them, reentered the store and met up with defendant; then defendant left the store with her merchandise in Walmart bags. Although defendant apparently never paid for her merchandise, she always had a receipt. When asked to show a receipt, defendant showed the receipt from Angelica and Terry's purchase at the automotive department register. The prior incidents were sufficiently similar to support the inference that defendant harbored the same intent in each instance, that is, to take merchandise from Walmart without paying for it. (See *Ewoldt*, *supra*, 7 Cal.4th at p. 402.) Moreover, the prior acts were similar to the charged

8

offense, and the evidence supported the inference that defendant employed the same plan in committing the charged offense. (*Id.* at p. 403.)

We note defendant's contention that the court erred in allowing Rutledge to refresh her recollection during her testimony by referring to narrative reports she had written regarding the three prior incidents. Defendant objected to the narrative reports below, claiming that the prosecution violated discovery rules by failing to provide copies of these reports to her. The court held an extensive hearing on this issue before allowing Rutledge to refer to them. Defendant now claims that the court "concluded error occurred when the police failed to give the documents to the district attorney's office after collecting them from Wal-Mart," and that the court "overlooked a serious discovery violation" by allowing Rutledge to refer to the reports. She asserts that allowing Rutledge to testify from these reports "compounded the prejudicial error" of admitting the prior acts evidence. We see no prejudicial error. In contrast to defendant's contention, the prosecutor indicated that she had not seen the reports prior to Rutledge bringing them to use at trial during her testimony. Accordingly, the court found no "firm evidence" that police had previously obtained copies of the reports, and the court declined to issue a discovery sanction. Moreover, we note that the defense was given copies of the reports and time to review them before Rutledge continued with her testimony.

Furthermore, the trial court limited any prejudicial impact of the prior acts evidence by instructing the jury that such evidence was admitted "for the limited purpose of proving intent or that [defendant] had a scheme or plan to commit the offense

9

charged." The court specifically instructed the jury that it could consider the evidence "only for those purposes and for no other."

We conclude that defendant's prior conduct was relevant evidence of her intent while shopping at Walmart on March 19, 2011, and the evidence of her prior acts demonstrated a common plan or scheme. Thus, the court properly admitted the prior acts evidence under section 1101.

D. *Any Error Was Harmless*

Assuming arguendo that the trial court abused its discretion in admitting evidence of defendant's prior acts, the error would not require reversal. Even if the evidence of the three prior incidents was disregarded, there was more than enough evidence to support defendant's current conviction of second degree commercial burglary. Rutledge testified that she personally observed defendant, Angelica, and Terry shopping together at Walmart on March 19, 2011. The surveillance video showed Angelica purchasing such items as toilet paper, paper towels, paper plates, etc., at the automotive department cash register. Mata-Lopez testified she personally observed Angelica give the receipt to Terry.

Meanwhile, Rutledge observed defendant in the store with a shopping cart containing toilet paper and other items. Rutledge personally saw Terry hand defendant a receipt. Rutledge then observed defendant push her cart to the plastic aisle, stop her cart, take items out of her cart, pull out a plastic Walmart bag full of merchandise from the shelf, and put that bag in her cart. Rutledge followed defendant to the front of the store and Mata-Lopez joined her. Rutledge observed, and the surveillance video captured, defendant pushing her shopping cart past the cash registers and leaving the store without

10

paying. When Rutledge and Mata-Lopez stopped defendant, defendant said she had a receipt and offered to show it. The receipt that defendant produced was the receipt from Angelica's purchase of the same or similar items in the automotive department that day.

In view of this evidence, "it is not reasonably probable that a result more favorable to defendant would have resulted had the prior [acts] evidence not been admitted. [Citations.] For the same reasons, any error was harmless beyond a reasonable doubt. [Citations.]" (*Cole*, *supra*, 33 Cal.4th at p. 1195.)

E. *There Was No Cumulative Error*

Defendant contends that the cumulative effect of the alleged errors at trial requires reversal. Inasmuch as we have rejected each and every claim of error individually, we find no cumulative error sufficient to have affected the outcome of the trial to her detriment.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:

RAMIREZ
P. J.

KING
J.

11